| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | USDC-SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC#:<br>DATE FILED: |

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ESPEDICTO ANTONIO PERALTA FERNANDEZ,<br><br>    Defendant. | No. 18-CV-11818 (RA)<br><br>No. 15-CR-599-RA-5<br><br>OPINION AND ORDER |

RONNIE ABRAMS, United States District Judge:

Espedicto Antonio Peralta Fernandez, proceeding *pro se*, moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. He contends that his counsel provided ineffective assistance during plea negotiations, in preparation for his plea allocution, and at sentencing, and that his sentence was improperly enhanced by uncharged conduct. Peralta Fernandez also seeks leave to amend his motion, as well as the appointment of pro bono counsel. For the following reasons, the motions are denied.

## BACKGROUND

In March 2017, a superseding information charged Peralta Fernandez in two counts: (1) conspiracy to import into the United States five kilograms and more of cocaine, in violation of 21 U.S.C. §§ 963, 960(b)(1)(b); and (2) conspiracy to distribute and possess with intent to distribute five kilograms and more of cocaine into the United States, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A). *See* No. 15-CR-599, Dkt. 99. Both charges stemmed from the same course of conduct that spanned "[f]rom at least in or about 2012, up to an including at least in or about September 2015, in the Southern District of New York and elsewhere." *Id.* Each count carries a mandatory minimum sentence of ten years' imprisonment.

Peralta Fernandez pleaded guilty to these two counts pursuant to a written plea agreement. The plea agreement stipulated that "the offense involved at least 150 kilograms but less than 450 kilograms of cocaine." *See* No. 15-CR-599, Dkt. 207-1 at 2 ("Plea Agreement"). With respect to the United States Sentencing Guidelines ("Guidelines"), the Plea Agreement provided that the government believed that two two-level sentencing enhancements applied because Peralta Fernandez acted as "an organizer, leader, manager or supervisor in the criminal activity," and due to his aggravating role in the importation of a controlled substance. *Id.* at 2-3. The Plea Agreement, however, "reserve[d] [Peralta Fernandez's] right to argue that these enhancements d[id] not apply." *Id.* at 3. In accordance with the above stipulations, Peralta Fernandez's total offense level under the Guidelines would be 37 if the Court were to agree with the government's position on the enhancements and 33 were the Court to find them inapplicable. *Id.* Peralta Fernandez would thus be exposed to an advisory range of either 210-262 months or 135-162 months' imprisonment. *Id.* Lastly, the Plea Agreement contained an appellate waiver that prohibited Peralta Fernandez from "fil[ing] a direct appeal" or "bring[ing] a collateral challenge" to any sentence within or below a range of 135 to 262 months' imprisonment, but preserved his right to assert "claims of ineffective assistance of counsel." *Id*. at 4-5.

On March 22, 2017, Peralta Fernandez waived indictment and consented to proceed before a United States Magistrate Judge on a felony plea allocution. *See* No. 15-CR-599, Dkt. 207-3 at 3-4 ("March 22 Plea Hearing"). Asked by Magistrate Judge Pitman whether there was any agreement between him and the government, Peralta Fernandez said no. *Id.* at 7. Defense counsel then explained that he had spent "many hours" reviewing and negotiating the plea agreement with his client. *Id.* at 8. When asked again, Peralta Fernandez told Judge Pitman that the Plea Agreement was an agreement between him and the government concerning sentencing and that he

2

"f[e]ll under guideline 36." *Id*. at 9-10.  After it was revealed that the parties had different interpretations on the effect of the Plea Agreement on the government's ability to appeal a sentence, Judge Pitman adjourned the hearing. *Id.* at 13.

Two days later, Peralta Fernandez again appeared before Judge Pitman to plead to the two counts in the superseding information. *See* No. 15-CR-599, Dkt. 207-3 ("March 24 Plea Hearing").  With regard to Count One, Peralta Fernandez stated that he understood the nature of the charges against him and acknowledged "that proof that one of the objects of the conspiracy was to import *5 kilograms or more* of cocaine" would "subject [him] to greater or enhanced penalties." *Id*. at 9 (emphasis added).  As to Count Two, he affirmed his understanding that he was charged "with conspiring to distribute and to possess with intent to distribute 5 kilograms or more of cocaine." *Id.* at 10.  Peralta Fernandez acknowledged that he faced a mandatory minimum sentence of 10 years' imprisonment on each of the two charges, and that the ultimate sentence would be determined by a judge based in part on the preparation of a presentence report and a calculation of advisory sentencing guidelines. *Id*. at 9, 11-14.

When asked what conduct made him guilty of the charged offenses, Peralta Fernandez responded: "In regard to Count One, my understanding is that I conspired with another person from Miami, and in regard to Count Two, I conspired with another person who was trying to introduce drugs into the United States." *Id*. at 18.  With respect to whether he agreed with someone else to bring cocaine into the United States, Peralta Fernandez explained:

> Well, in regard to Count One, that person went to the Dominican Republic, and that person bought drugs from me to bring to the United States. With the second person, that person invited me to talk about bringing drugs here to the United States. After seven months of having that conversation, after six or seven months, that person transported drugs to this country. I didn't participate. I didn't have any conversation with him about the details, but my attorney explained to me that the fact that I did have a conversation with him at the very beginning -- that means that I became involved in a conspiracy along with him.

3

*Id*. at 19. When pressed further, Peralta Fernandez stated that he sold 64 kilos of cocaine to "that person" in "2010/2011," but made no such sales during the relevant period between 2012 and 2015. *Id.* at 19-20. Concerned that Peralta Fernandez had allocuted to "some other conspiracy" other than that alleged in the superseding information, *id.* at 21, Judge Pitman inquired as to whether Peralta Fernandez had "agree[d] with anyone to bring cocaine into the United States or cause cocaine to be brought into the United States between 2012 and 2015," *id.* at 22. Peralta Fernandez responded in the affirmative, stating that 125 kilos were "involved in the 2012 to 2015 time period." *Id.* After Judge Pitman discussed the distinction between an agreement and a mere conversation, Peralta Fernandez again affirmed that he had agreed to bring cocaine into the United States, but stated that he was "never involved in th[e] particular agreement" to import 125 kilos. *Id.* at 24. Pressed further, Peralta Fernandez affirmed that he had agreed with someone in the Dominican Republic to find a source in Colombia to obtain more than five kilograms of cocaine which was destined for the United States. *Id.* at 25. With respect to Count Two, Peralta Fernandez represented that it was his understanding that the cocaine, upon arrival in the United States, was to be distributed. *Id.* at 27. Concluding that the plea was "knowing and voluntary and supported by an independent basis in fact as to each of the essential elements of the offense," Judge Pitman both accepted Peralta Fernandez's plea of guilty and recommended that this Court accept the plea. *Id.* at 29-30; *see United States v. Williams,* 23 F.3d 629, 633 (2d Cir. 1994); *Norville v. United States*, 151 F. Supp. 3d 329, 341 (S.D.N.Y. 2015).

   The Presentence Investigation Report ("PSR") prepared by the U.S. Probation Office concluded that Peralta Fernandez was responsible, as stipulated in the plea agreement, for 150-450 kilograms of cocaine, and that each proposed sentencing enhancement—for direct involvement in the importation of a controlled substance and for acting as an organizer, leader, manager, or

4

supervisor in any criminal activity—applied. The PSR calculated the advisory sentencing range to be 210 to 262 months. Pursuant to *United States v. Fatico*, 603 F.2d 1053 (2d Cir. 1979), the Court scheduled a hearing to determine disputed facts bearing on the sentence to be imposed. In advance of that hearing, the government provided defense counsel with additional discovery materials, including a summary of proposed testimony from a cooperating witness about prior dealings with Peralta Fernandez. *See* Dkt. 207-5 at 4 ("Attorney Affidavit"). According to defense counsel, that testimony would have implicated Peralta Fernandez not only in the importation of hundreds of kilograms of drugs into the United States, but also in "possession of weapons, and participation in acts of violence, including assaults and kidnappings." *Id.* at 6. After receiving the discovery materials, defense counsel informed that government that Peralta Fernandez would no longer dispute the proposed enhancements. No *Fatico* hearing was held. Peralta Fernandez's sentencing memorandum conceded that the PSR accurately calculated his total offense level and Guidelines range, while advocating for a below-Guideline sentence. *See* No. 15-CR-599, Dkt. 139 at 9-12.

Peralta Fernandez appeared for sentencing before this Court on December 15, 2017. *See* No. 15-CR-599, Dkt. 207-4 ("Sentencing Hearing"). Peralta Fernandez did not object to the drug quantity calculated in the PSR, which the Court adopted with minor modifications. *Id.* at 7-9. Defense counsel again confirmed agreement with the Guidelines calculation of 210-262 months. *Id.* at 10. The Court reached the same calculation. *Id.* The government advocated for a sentence within that range, asserting that Peralta Fernandez participated "[b]etween 2010 and 2015" in an "extensive drug-trafficking organization," and that Peralta Fernandez had admitted to participating in two discrete transactions: the first "in which [he] and others conspired to conceal multikilogram quantities of drugs in containers that were being transported from Central America to a port in

Miami," and the second "in which there was a discussion about bringing a larger container of drugs into the United States through a port in New Jersey," containing "upwards [of] 100-, 125-kilogram[s]." *Id.* at 11-12. The government further noted that wiretap investigations revealed "[Peralta Fernandez] communicating with other targets in [its] investigation about continuing to import drugs both to the United States and to Puerto Rico." *Id.* at 14.

Peralta Fernandez denied "sen[ding] drugs from South America to Miami in 2012" or sending the 125 kilograms of cocaine to New Jersey, but accepted responsibility for entering the conspiracy. *Id.* at 27. In response, the Court inquired whether it would be appropriate to hold a *Fatico* hearing to determine drug quantity or other facts that would bear on Peralta Fernandez's role within the conspiracy. *Id.* at 28. Defense counsel declined the invitation as evidence from cooperating witnesses would easily establish that "that there was a reasonable expectation that that amount [of drugs] would be involved [in the conspiracy]." *Id.* at 28-29. The Court sentenced Peralta Fernandez to a term of 145 months on each count to run concurrently. *Id.* at 33. Peralta Fernandez did not appeal his sentence or conviction. *See* Mot. at 1.

Peralta Fernandez now seeks post-conviction relief pursuant to 28 U.S.C. § 2255, claiming that his counsel was ineffective and that his sentence was illegally enhanced by uncharged conduct. First, Peralta Fernandez argues that his attorney improperly advised him to stipulate to a drug quantity that was neither foreseeable nor within the charged conspiracy and failed to advocate for a minor-role reduction or eligibility for the safety valve. Mot. at 2. He maintains that this ineffective assistance led to him pleading guilty without "understanding of the nature of the charge," particularly the effect of the stipulated drug quantity on his sentence. *Id*. Second, Peralta Fernandez claims that his sentence was "enhanced in violation of Due Process" by consideration of "uncharged and relevant conduct without a finding by the jury" or knowing admission by

6

himself. *Id.* at 3. Peralta Fernandez also seeks leave to amend his motion, so as to add "additional facts and arguments that establish the involuntary nature of his guilty plea which includes the complete absence of a factual basis for the plea." No. 18-CV-11818, Dkt. 6 at 1. He has further moved for appointment of pro bono counsel. *See* No. 18-CV-11818, Dkt. 9.

## LEGAL STANDARD

A prisoner in federal custody may bring a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence on the grounds that it is in violation of the Constitution or United States law, was imposed without jurisdiction, exceeds the maximum penalty, or is otherwise subject to collateral attack. 28 U.S.C. § 2255(a).

A court must "grant a prompt hearing," unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Id*. § 2255(b). The filing of a § 2255 motion, however, "does not automatically entitle the movant to a hearing." *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013). "To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the movant] to relief." *Id.* at 131. "The movant's assertions in support of the motion need not be assumed credible if they are contradicted by the record." *Ramos-Nunez v. United States*, No. 14-CR-102 (VSB), 2019 WL 1300811, at *3 (S.D.N.Y. Mar. 21, 2019) (citing *Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir. 2009)).

A defendant is procedurally barred from filing a § 2255 motion to the extent that it raises issues not previously addressed on direct appeal. *See, e.g., United States v. Pipitone*, 67 F.3d 34 (2d Cir. 1995). "A party who fails to raise an issue on direct appeal and subsequently endeavors to litigate the issue via a § 2255 petition must show that there was cause for failing to raise the issue, and prejudice resulting therefrom." *Id*. at 38. Moreover, "a waiver of appeal provision in a

plea agreement d[oes] not constitute 'cause' for failing to take a direct appeal." *Garcia-Santos v. United States*, 273 F.3d 506, 508 (2d Cir. 2001). Ineffective assistance of counsel, however, may represent such cause. *See Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994).

## DISCUSSION

### I. Peralta Fernandez's Claims of Ineffective Assistance of Counsel

Peralta Fernandez argues that he received ineffective assistance of counsel during plea negotiations, in preparation for his plea of guilty, and at sentencing. "A defendant in criminal proceedings has a right under the Sixth Amendment to effective assistance from his attorney at all critical stages in the proceedings, which include entry of a plea of guilty and sentencing." *Gonzalez,* 722 F.3d at 130. To establish a claim of ineffective assistance of counsel, a defendant must show: (1) that his attorney's performance fell below "an objective standard of reasonableness" under "prevailing professional norms," and (2) that he suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

When considering the first prong of the *Strickland* test, a court must apply a "strong presumption" that counsel's representation fell within the "wide range" of reasonable professional assistance. *Id.* at 689. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690. "In assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' . . . and may not use hindsight to second-guess his strategy choices." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland*, 466 U.S. at 690).

Even if a defendant has shown that an attorney's performance was objectively unreasonable, he must still demonstrate that he was prejudiced by his counsel's deficient conduct.

To establish prejudice, the defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding."  *Id.* at 693.  Where, as here, the defendant did not go to trial, "he must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Gonzalez*, 722 F.3d at 130 (internal quotation marks omitted).  When the claim concerns ineffective assistance at sentencing, "the defendant must show a reasonable probability that, but for counsel's substandard performance, he would have received a less severe sentence." *Id.*

Because Peralta Fernandez has not demonstrated that his counsel's conduct affected his decision to plead guilty or the severity of his sentence, his claim fails.  For this reason, the Court need not address whether his attorney's performance fell below an objective standard of reasonableness.

    **A.**    **Claims with Respect to Plea Negotiations**

Peralta Fernandez principally contends that his counsel erred by advising him to stipulate in the plea agreement to a Guidelines range reflecting a drug quantity for which he now claims he was not responsible.  He maintains that he "repeatedly informed counsel that he was not responsible for . . . nor involved in that amount" of drugs, and that counsel "could have left this amount open or at minimum reduced it to 5 kilograms pursuant to his admitted charge."  Mot. at 5.

This argument is unpersuasive.  Peralta Fernandez has not established a reasonable probability that he would have received a less severe sentence had counsel not advised him to stipulate to that drug quantity. *Gonzalez*, 722 F.3d at 130.  In his motion, Peralta Fernandez

declares that he "had advised [his] attorney that [he] accept[ed] responsibility for the 64 kilograms that [he] was involved in." *See* No. 18-CV-11818, Dkt. 5 ¶ 2. Pursuant to the Guidelines Manual effective at his sentencing, a stipulation to that amount would have resulted in a base offense level of 34 and translated to an advisory range of 168-210 months, assuming the Court applied the same enhancements and reductions that it did at sentencing. *See* U.S.S.G § 2D1.1(a)(5) (2016). The 145-month sentence that the Court imposed falls below that range. Thus, even accepting Peralta Fernandez's allegations as true, a stipulation based on his acceptance of responsibility for 64 kilograms would have resulted in an advisory guidelines range that was higher than the actually imposed sentence.

In any event, the record demonstrates that the government provided Peralta Fernandez with evidence that would have proved that at least 150 kilograms of cocaine was within the scope of his jointly undertaken criminal activity. In the affidavit appended to the government's opposition to this motion, defense counsel affirms that he received evidence to the effect that Peralta Fernandez "attempt[ed] to supply [a cooperating witness] with a wholesale quantity of cocaine into the United States through a port in New Jersey in or around 2013." *See* Attorney Affidavit at 4. That same witness was subsequently arrested attempting to smuggle approximately 125 kilograms of cocaine into a New Jersey port. *Id.* Under those circumstances, and in light of additional evidence that he "regularly dealt in kilogram or multi-kilogram quantities of cocaine," *id*. at 5, as well as his admission to selling 64 kilograms of cocaine, Peralta Fernandez has failed to show a reasonable probability that he would have received a less severe sentence but for the stipulation. The evidence available to defense counsel was sufficient for a court to conclude that Peralta Fernandez reasonably foresaw that his conduct would result in the importation of more than 150 kilograms of cocaine. *See, e.g.,* U.S.S.G. § 1B1.3 Application Note 3 (stating that a

defendant convicted of a jointly undertaken criminal activity is accountable for "all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook"). In sum, the record belies the contention that counsel's advice to enter the stipulation affected the severity of Peralta Fernandez's sentence.

### B. Claims with Respect to the Voluntariness of the Plea

Peralta Fernandez further contends that his guilty plea was not knowing and voluntary because his counsel failed to advise him that the quantity of drugs for which he was responsible "needed to be proven beyond a reasonable doubt by the jury." Mot. at 6. In his motion for leave to amend, Peralta Fernandez further contends that the guilty plea lacked a factual basis sufficient to convict him. No. 18-CV-11818, Dkt. 6 at 1. None of these contentions has merit.

"Ineffective assistance of counsel during plea negotiations can invalidate a guilty plea . . . to the extent that the counsel's deficient performance undermines the voluntary and intelligent nature of defendant's decision to plead guilty." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005). When determining whether a plea was voluntary, "statements at a plea allocution carry a strong presumption of veracity" and "bald statements that simply contradict what [was] said at [a] plea allocution" are insufficient to raise questions about voluntariness. *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997).

Peralta Fernandez fails to persuade the Court that his plea was not knowing and voluntary. His motion appears to assert that he knowingly pleaded to every element of the crime of drug conspiracy except for drug quantity. The drug quantity to which Peralta Fernandez stipulated at sentencing, however, had no effect on his guilty plea. To trigger the mandatory minimum ten-year sentence for each of the counts to which he pleaded guilty, the quantity of cocaine that the government needed to attribute to Peralta Fernandez was only five kilograms. *See* 21 U.S.C.

§§ 841(b)(1)(A)(ii); 960(b)(1)(B))(ii).  Indeed, in his motion, Peralta Fernandez admits that he took part in a drug conspiracy that involved more than five kilograms of cocaine.  *See* No. 18-CV-11818, Dkt. 5 ¶ 2 ("accept[ing] responsibility for the 64 kilograms that [he] was involved in").  He made a similar admission at the March 24 plea hearing.  *See* March 24 Plea Hearing at 27 (admitting that he located more than 5 kilograms of cocaine for individual in Santo Domingo who "was going to distribute it").  The additional quantity of cocaine attributed to Peralta Fernandez at sentencing affected only the calculation of the advisory sentencing range, not the determination that he was guilty of each of the two crimes.  Any effect that the drug quantity had on sentencing is therefore not indicative of the voluntariness of Peralta Fernandez's guilty plea.  Accordingly, the Court does not credit the argument that defense counsel's purported failure to inform his client that drug quantity was an element of the offense rendered the plea suspect.

Nor is there any indication that the plea lacked a factual basis.  In moving for leave to amend, Peralta Fernandez claims that he never knowingly agreed to bring drugs into the United States, and is thus not guilty of his conviction for Count One.[1]  *See* 21 U.S.C. § 963(a)(1) (prohibiting the knowing or intentional importation of a controlled substance).  He maintains that he agreed to sell drugs abroad, but did not know or intend that the drugs would enter the United States.  Those assertions are contradicted by his admission, however, during his plea hearing, that a "person went to the Dominican Republic, and . . . bought drugs from me *to bring to the United States*."  March 24 Plea Hearing at 19 (emphasis added).  Peralta Fernandez subsequently admitted that the amount of cocaine "was impossible for [that person] to use it all on his own" and that "[h]e was going to distribute it." *Id.* at 27.  Accordingly, the Court declines to overturn his guilty plea on that basis.

---

[1] Peralta Fernandez does not challenge his conviction for Count Two on that basis.

12

### C. Claims with Respect to Sentencing Enhancements

The Court is similarly unpersuaded by Peralta Fernandez's claims regarding defense counsel's failure to advocate for a minor-role reduction pursuant to U.S.S.G. § 3B1.2 or eligibility for the "safety valve" provided in 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2. Peralta Fernandez cannot demonstrate a reasonable probability that such advocacy would have affected the outcome of his sentencing proceeding, given that the Court found that he was in fact deserving of an aggravating-role enhancement, which made him ineligible for safety valve treatment. *See* 18 U.S.C. 3553(f)(4) (prohibiting application of safety valve to defendant who was "an organizer, leader, manager, or supervisor of others in the offense"). Of course, that enhancement also precluded a minor-role reduction. Although Peralta Fernandez maintains that he was a mere "broker in a buyer-seller relationship" and "did not manage or supervise anyone," Mot. at 4, both defense counsel and the government contend that the available evidence suggested otherwise. This evidence—including text messages in which Peralta Fernandez discussed in coded language the importation of drugs into the United States, video and tape recordings of phone calls and meetings, and the testimony of two cooperating witnesses—implicated Peralta Fernandez in the transport of "other large loads of cocaine . . . all over the world . . . and his interactions and drug-related associations with more than five (5) participants." Attorney Affidavit at 1-2, 6.

Because Peralta Fernandez has not established that his defense counsel was constitutionally ineffective in his handling of the plea agreement, the guilty plea, or sentencing, his first ground for § 2255 relief is denied. For the same reasons, his motion for leave to amend is denied on the basis of futility. *See, e.g., Tocker v. Philip Morris Cos*, 470 F.3d 481, 491 (2d Cir. 2006).

## II. Peralta Fernandez's Due Process Claim Regarding Sentencing

Peralta Fernandez's final claim—that his sentence was enhanced on the basis of unspecified uncharged conduct in violation of his due process rights—is procedurally barred because he did not raise the issue on direct appeal. *See Pipitone*, 67 F.3d at 38. Peralta Fernandez did not appeal his sentence, and the appellate waiver in the Plea Agreement does not excuse this failure. *See Garcia-Santos*, 273 F.3d at 508. Because he has not demonstrated any good cause for raising this issue for the first time in a § 2255 motion, it is not properly before the Court. Even if the Court were to reach the merits of Peralta Fernandez's assertion that his due process rights were violated—apparently by the Court's consideration of a drug quantity for which he denies responsibility—it would deny § 2255 relief for the reasons described above. *See supra* Part I.

## III. No Evidentiary Hearing Is Required

As noted above, a Court need not hold an evidentiary hearing where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). A § 2255 motion should be dismissed "'if it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief.'" *Ramos-Nunez*, 2019 WL 1300811, at *3 (quoting Fed. R. Governing Sec. 2255 Proceedings in the U.S.D.C. 4(b)). No evidentiary hearing is required here because Peralta Fernandez's motion, read in conjunction with the record, conclusively demonstrates that he is not entitled to any relief.

## CONCLUSION

For the foregoing reasons, Peralta Fernandez's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is denied. His subsequent motions to amend his motion and to appoint pro bono counsel are similarly denied. Because the Court concludes that there has been "no substantial showing of the denial of a constitutional right" in this case, it declines to issue a certificate of appealability. 28 U.S.C. § 2253(c)(2); *see Matthews v. United States*, 682 F.3d 180, 185 (2d Cir. 2012).

The Clerk of Court is respectfully directed to close the case number 18-CV-11818, and to terminate the items 192 and 216 on the docket for case number 15-CR-599-RA-5.

SO ORDERED.

Dated:   February 3, 2021
         New York, New York

Ronnie Abrams
United States District Judge